[No. H021274. Sixth Dist. Aug. 28, 2001.]

RICHARD T. ABBATE et al., Plaintiffs and Appellants, v.
COUNTY OF SANTA CLARA et al., Defendants and Respondents.

**COUNSEL**

Burnett, Burnett & Allen, Douglas B. Allen and Blaine L. Fields for Plaintiffs and Appellants.

Ann Miller Ravel and James Rumble, County Counsel; Dodd, Futterman & Dupree and Martin H. Dodd for Defendant and Respondent.

**OPINION**

**PREMO, Acting P. J.**—After two unsuccessful attempts to provide armed correctional officers in the Santa Clara County jail when control of the jail was transferred from the sheriff (Sheriff or Sheriff's Office) to the newly formed county Department of Correction (Correction), in 1997 the Santa Clara County Board of Supervisors retransferred jail functions requiring armed officers to the Sheriff. Correctional officers were transferred to the Sheriff's Office for assignment as sheriff's transportation officers, sheriff's security officers, and deputies of the sheriff to work in the jail. Thereafter,

plaintiff Santa Clara County Correctional Peace Officers' Association[1] sought declaratory relief to establish that these officers were deputy sheriffs with Penal Code section 830.1, subdivision (a)[2] peace officer status. Plaintiffs also requested a writ of mandate directing defendant County of Santa Clara[3] to provide state-mandated POST training[4] and take whatever steps were needed to regularize the position of these officers. The trial court found that correctional officers were not deputy sheriffs and denied extraordinary relief.

FACTS

In 1988, the voters approved a charter amendment which transferred responsibility for the county jails from the Sheriff to Correction to save public funds. Correction, a law enforcement agency, was established pursuant to Government Code section 23013 and was vested with the same authority as the sheriff with respect to institutional punishment, care, treatment and rehabilitation of prisoners. (*People v. Garcia* (1986) 178 Cal.App.3d 887, 895-896 [223 Cal.Rptr. 884].) However, certain functions performed in the jail such as transporting prisoners, pursuing escaped prisoners, conducting searches and seizures and arrests, and supervising the custodial officers, required officers who were authorized to carry firearms.

Sheriffs and deputy sheriffs are peace officers (§ 830.1, subd. (a)) and have the authority to carry firearms. Sheriff's deputies employed at the jail had peace officer training and the full powers of peace officers and performed all the functions for which armed officers were needed at the jail. When the jail was transferred to Correction, the deputies were transferred from the Sheriff's Office to that department, but retained a contractual right to transfer to the Sheriff's Office as vacancies arose. By June 1990, a substantial number had done so, thus reducing the number of armed officers below that required by state law.

The solution attempted by the chief of Correction was to confer limited peace officer powers on his deputies. However, the chief of Correction is a

---

[1] Plaintiffs are Richard T. Abbate, president of the Santa Clara County Correctional Peace Officers' Association who is employed in Correction and who holds the position "Correctional Officer/Sheriff, Correctional Officer/Deputy Sheriff," and the Correctional Peace Officers' Association suing on behalf of himself and others similarly situated, collectively, "plaintiffs."

[2] Further statutory references are to the Penal Code unless otherwise stated.

[3] Defendants are the County of Santa Clara, its board of supervisors, Pete McHugh, Blanca Alvarado, Jim Beall, Joe Simitian, Don Gage, Correction Chief Timothy Ryan, Correction, Sheriff Laurie Smith, and the Sheriff's Office, collectively, "County."

[4] Section 832 sets forth training requirements prescribed by the Commission on Peace Officer Standards and Training (POST).

custodial officer, that is, "a public officer, not a peace officer, employed by a law enforcement agency of a . . . county who has the authority and responsibility for maintaining custody of prisoners and performs tasks related to the operation of a local detention facility . . . ." (§ 831, subd. (a); see § 831.5, subd. (a).[5]) Custodial officers (called correctional officers by County) have no right to carry or possess firearms in the performance of their duties. (§ 831, subd. (b).) Thus, Correction could not confer peace officer status on the correctional officers. (*County of Santa Clara v. Deputy Sheriffs' Assn.* (1992) 3 Cal.4th 873, 877-878 [13 Cal.Rptr.2d 53, 838 P.2d 781].)

County next attempted to fill the need for armed officers in the jail by consolidating Correction and the county Probation Department. Probation officers are entitled to carry firearms in the performance of certain duties, such as transporting persons on parole or probation, in connection with the escape of any inmate or ward from a state or local institution, and in connection with violations of any penal provisions of law discovered in the performance of duty. (§ 830.5) The merger was declared unlawful by this court in *People ex rel. Deputy Sheriffs' Assn. v. County of Santa Clara* (1996) 49 Cal.App.4th 1471 [57 Cal.Rptr.2d 322].)

The next attempt to supply peace officers for the jail is in issue here. In April 1997, County and the Sheriff's Office entered an agreement (Agreement), in effect until June 4, 2001,[6] intended to temporarily solve the problem by transferring correctional officers and the transportation and security functions requiring armed officers to the Sheriff until passage of anticipated amendments to section 830.1, subdivision (c).[7] The amendments were not enacted. However, they would have granted limited peace officer status to correctional officers in County.

The Agreement transfers inmate transportation and perimeter security functions and allocates personnel to carry out these duties to the Sheriff's

---

[5]Section 831.5, subdivision (a) was amended in 1999 to add Santa Clara County to the counties named in the section and "to clarify the relationships of the correctional officers and deputy sheriffs in Santa Clara County." (§ 831.5, subd. (j).) (Sen. Bill No. 1019 (1999-2000 Reg. Sess.), adopted by Stats. 1999, ch. 635, § 1, eff. Oct. 10, 1999.)

[6]We take judicial notice at plaintiffs' request that the Agreement was extended by way of a ninth amendment until June 4, 2001, while the parties "work[ed] out the issues which have been identified in the proposed agreement."

[7]Section 830.1, subdivision (c) in current effect states, "Any deputy sheriff of a county of the first class, and any deputy sheriff of the County of San Diego, who is employed to perform duties exclusively or initially relating to custodial assignments with responsibilities for maintaining the operations of county custodial facilities, including the custody, care, supervision, security, movement, and transportation of inmates, is a peace officer whose authority extends to any place in the state only while engaged in the performance of the duties of his or her respective employment and for the purpose of carrying out the primary function of employment relating to his or her custodial assignments, or when performing other law enforcement duties directed by his or her employing agency during a local state-of-emergency."

Office. The Sheriff agrees to "appoint correctional officers as deputies to perform transportation, security or other correctional officer functions with such peace officer authority as conferred by law . . . ."

The Agreement separately treats current deputy sheriffs working in the jail and correctional officers. "Full Peace Officer Personnel Assigned to [Correction]" are 12 sergeants and one lieutenant within Correction "who have remained full peace officer deputies of the Sheriff, and currently possess Basic, Intermediate or Advanced POST certificates. These 13 Penal Code [section] 830.1(a) deputies of the Sheriff are available to exercise peace officer supervision and other peace officer duties as may be required." The Sheriff agrees to maintain staffing of section 830.1, subdivision (a) sergeants at 13 and lieutenants at one and to add one captain.

"Penal Code [section] 830.1(a) deputies of the Sheriff of any rank . . . assigned to [Correction] . . . shall maintain their status as deputies of the Sheriff, and maintain their status as POST certified peace officers unless revoked by the Sheriff for good cause."

As for the correctional officers, "until such time as Penal Code Section 830.1(c) is amended to include coverage of Santa Clara County," paragraph 2 transfers 74 correctional officers to the Sheriff's Office to carry out transportation assignments; 11 are transferred to perform medical security duties; and 11 are transferred to fill court security assignments thereby freeing 11 deputy sheriffs for assignment to Elmwood jail perimeter functions.

The remaining 600-plus correctional officers are described in paragraph 4 as "[a]ll correctional officers and sergeants, not transferred pursuant to Paragraph 2." They are "transferred to the Sheriff's Office and immediately reassigned pursuant to the provisions of the Penal Code as deputies of the Sheriff until such time as Penal Code Section 830.1(c) is amended to include coverage of Santa Clara County." For all correctional officers, "[o]nce the amendment is in effect the Sheriff shall change the officers [*sic*] status to that of Sheriff's Correctional Officers or Sheriff's Correctional Sergeant with on duty peace officer authority as conferred by law . . . ."

According to the declaration of James Rumble, assistant county counsel who was "closely involved with the legal, factual and political issues concerning the status of Santa Clara County correctional officers" over the last decade, the provisions for Sheriff's transportation and security officers were intended to comply with sections 831.4 and 831.6. "The remaining correctional officers [who] were transferred to the Sheriff's Office, but

immediately reassigned to [Correction] as 'deputies of the Sheriff' to serve under the supervision of full peace officers still working in the jails . . . were essentially deputized as sheriff's security officers within the meaning of Penal Code § 831.4 for purposes of working in the jails." (Cf. *County of Santa Clara v. Deputy Sheriff's Assn., supra,* 3 Cal.4th at p. 882, fn. 11 ["[t]he parties appear to agree that the sheriff may deputize custodial officers as peace officers under appropriate circumstances"].)

Rumble continues, "[t]he Sheriff's Office retains supervision over such officers to the extent that they exercise a number of peace officer-related duties, including in particular, gun-bearing authority. [Correction] is responsible for supervising all other correctional officer job functions."

Six months after plaintiffs filed this action for declaratory and extraordinary relief, in September 1999, the Legislature amended section 831.5 via Senate Bill No. 1019 "to settle the issue of the 'status' of the correctional officers which Santa Clara County will use within its detention facilities. Those issues primarily pertain to both 'limited peace officer' status and the authority of those custodial officers to carry firearms, both on and off duty." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1019 (1999-2000 Reg. Sess.) May 12, 1999, p. 5.)

Section 831.5, subdivision (a) now includes Santa Clara County in the list of counties whose custodial officers are not "employees of, and under the authority of, the sheriff, . . ." The statute also provides: "(h) Custodial officers employed by the Santa Clara County Department of Corrections are authorized to perform the following additional duties in the facility: [¶] (1) Arrest a person [under certain conditions]. [¶] (2) Search property, cells, prisoners, or visitors. [¶] (3) Conduct strip or body cavity searches of prisoners pursuant to Section 4030. [¶] (4) Conduct searches and seizures pursuant to a duly issued warrant. [¶] (5) Segregate prisoners. [¶] (6) Classify prisoners . . . . [¶] These duties may be performed at the Santa Clara Valley Medical Center as needed and only as they directly relate to guarding inpatient, in-custody inmates. This subdivision shall not be construed to authorize the performance of any law enforcement activity involving any person other than the inmate or his or her visitors.

"(i) Nothing in this section shall authorize a custodial officer to carry or possess a firearm when the officer is not on duty.

"(j) It is the intent of the Legislature that this section, as it relates to Santa Clara County, enumerate specific duties of custodial officers (known as 'correctional officers' in Santa Clara County) and to clarify the relationships

of the correctional officers and deputy sheriffs in Santa Clara County. These duties are the same duties of the custodial officers prior to the date of enactment of Senate Bill 1019 . . . . It is further the intent of the Legislature that all issues regarding compensation for custodial officers remain subject to the collective bargaining process between the County of Santa Clara and the authorized bargaining representative for the custodial officers. However, nothing in this section shall be construed to assert that the duties of custodial officers are equivalent to the duties of deputy sheriffs nor to affect the ability of the county to negotiate pay that reflects the different duties of custodial officers and deputy sheriffs."

The changes do not alter section 831.5, subdivision (c), which still provides, "A custodial officer has no right to carry or possess firearms in the performance of his or her prescribed duties, except, under the direction of the sheriff or chief of police, while engaged in transporting prisoners; guarding hospitalized prisoners; or suppressing jail riots, lynchings, escapes, or rescues in or about a detention facility falling under the care and custody of the sheriff or chief of police."

At the hearing on the instant petition, County argued that "[section] 831.5 answers all of the questions with regard to the first cause of action for declaratory relief. There isn't any controversy about [correctional officers'] duties. The statute provides for it. So, therefore, there isn't any declaration needed from this court because the Legislature has already spoken."

The court agreed, stating, "[T]he intent of the parties to the [Agreement] was not to make the transferred correctional officers into full peace officers. [¶] The language that we have talked about, and we have argued about, clearly indicates that there was not a desire on the part of the County, and apparently not on the part of the Sheriff's Department to make the transferred correctional officers into full peace officers." The court stated that amended section 831.5 was not a factor in its decision. However, the court agreed with County that because of the amendments to section 831.5, there was no present controversy regarding the correctional officers' authority to act as transportation or security officers under sections 831.4 and 831.6. The court stated plaintiffs were not entitled to act as peace officers beyond those powers given in the Agreement, and it denied mandamus to compel the Sheriff to provide POST-certified training and other relief. This appeal ensued.

ISSUES ON APPEAL

Plaintiffs question: "Did the Board of Supervisors and Sheriff by legislative act appoint a majority of the Santa Clara County Correctional Officers

as Deputies of the Sheriff by the adoption of the agreement between the office of the Sheriff and the County of Santa Clara, dated April 15, 1997? Having done so, is the Board precluded by Government code § [*sic*] 26605.1[8] from forcing those deputies of the Sheriff to become custodial officers under Penal Code § 831.5? Is the Sheriff obligated to provide State mandated training for the transferred deputy sheriffs? [¶] Were the correctional officers entitled to a declaration by the Court establishing their status as Deputy Sheriffs and mandatory relief requiring the Sheriff and the County to acknowledge their status and provide the required State mandated training?"

## SCOPE OF REVIEW

■ " 'Whether a determination is proper in an action for declaratory relief is a matter within the trial court's discretion . . . and the court's decision to grant or deny relief will not be disturbed on appeal unless it be clearly shown . . . that the discretion was abused.' " (*Application Group, Inc. v. Hunter Group, Inc.* (1998) 61 Cal.App.4th 881, 892-893 [72 Cal.Rptr.2d 73].) ■ In reviewing a trial court's judgment on a petition for writ of ordinary mandate, the appellate court applies the substantial evidence test to the trial court's factual findings, but exercises its independent judgment on legal issues, such as the interpretation of statutes. (*Kreeft v. City of Oakland* (1998) 68 Cal.App.4th 46, 52-53 [80 Cal.Rptr.2d 137].)

■ An appellate court will uphold "the trial court's factual determination of a contract's meaning if substantial evidence supports the determination." (*County of Solano v. Vallejo Redevelopment Agency* (1999) 75 Cal.App.4th 1262, 1274 [90 Cal.Rptr.2d 41].) In determining whether substantial evidence supports the finding, the appellate court may not reweigh the evidence, but must consider the evidence in the light most favorable to the prevailing party, giving them the benefit of every reasonable inference and resolving conflicts in the evidence in support of the judgment. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 766 [60 Cal.Rptr.2d 770].)

■ When parol evidence is introduced to aid in the interpretation of the meaning of doubtful or uncertain contractual language, the meaning of the contract is a question of fact. (*Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.* (1992) 4 Cal.App.4th 1538, 1559 [6 Cal.Rptr.2d 698].)

## DECLARATORY RELIEF

■ Plaintiffs claim that the trial court erred in finding that "deputies of the sheriff" were not "sheriff's deputies" because County "did not 'intend' to

---

[8]Government Code section 26605.1 states, "Notwithstanding any other provision of law, no deputy sheriff shall be required to become a custodial or other officer involuntarily."

make the correctional officers full [section] 830.1(a) deputies when [it] adopted the . . . Agreement." Plaintiffs claim that the term "deputy" has a specific meaning under the law, that "deputies of the Sheriff" cannot act under "all three public officer sections at a time while working in the jails," and that the correctional deputies transferred under the Agreement cannot be compelled to become custodial officers.

The "specific meaning under the law" that plaintiffs claim for the term "deputy sheriff" is that of a person "stand[ing] in the shoes of the Sheriff in carrying out their official duties." (See Gov. Code, § 24101; *Litzius v. Whitmore* (1970) 4 Cal.App.3d 244, 249 [84 Cal.Rptr. 340].) However, "[w]*hen not otherwise provided for*, each deputy possesses the powers and may perform the duties attached by law to the office of his principal." (Gov. Code, § 1194, italics added.) ■ Whether a person employed by the Sheriff is a Penal Code section 830.1, subdivision (a) "deputy sheriff" is based upon "the work to be performed or the duties to which one may be assigned that determines his status as an officer or employee." (*Cunning v. Carr* (1924) 69 Cal.App. 230, 233 [230 P. 987].) Section 830.1, subdivision (a) contemplates the possibility of a lesser delegation when it confers peace officer status on "[a]ny sheriff, undersheriff, or deputy sheriff, *employed in that capacity* . . . ." (Italics added.) Thus, an employee of the sheriff not required to perform the duties of a deputy sheriff is "otherwise provided for" (Gov. Code, § 1194), is not "employed in that capacity" (Pen. Code, § 830.1, subd. (a)), and is not a deputy sheriff with full peace officer powers.

■ County asserts sections 831.4 and 831.6 are the two sources of authority allowing the Sheriff to assign county correctional officers for transportation and security functions for the jail. Plaintiffs counter that the corrections officers given section 831.6 transportation duties cannot be transportation officers because they are employed by the Sheriff.

Section 831.6 provides that "(a) A transportation officer is a public officer, not a peace officer, appointed on a contract basis by a peace officer to transport a prisoner or prisoners. [¶] (b) A transportation officer shall have the authority of a public officer, and shall have the right to carry or possess firearms, only while engaged in the transportation of a prisoner or prisoners for the duration of the contract. . . ."

Plaintiffs do not recite the factual basis for their assertion that transferred correctional officers are employed by the Sheriff and are not appointed on a contract basis; maybe it is because section 2 of the terms of the Agreement states, "[t]he coded positions of the officers enumerated above [for transportation and security officer assignments] shall be allocated to the Sheriff's

budget; and the officers who are transferred shall be subject to the Sheriff's appointing and disciplinary authority."

Nevertheless, the reassignment of the correctional officers was accomplished in accordance with a contract between two county agencies, Correction and the Sheriff's Office. As such, the transportation officers were "appointed on a contract basis."

Next, plaintiffs assert that corrections officers "cannot simultaneously operate under Penal Code §§ 831 and 831.4 as the code sections are mutually exclusive of their duties and the authority to carry a weapon."

Under section 831.4, "(a) A sheriff's . . . security officer is a public officer, employed by the sheriff of a county . . . whose primary duty is the security of locations or facilities as directed by the sheriff . . . limited to the physical security and protection of properties owned, operated, controlled, or administered by the county . . . , or necessary duties with respect to the patrons, employees, and properties of the employing county . . . . [¶] (b) A sheriff's . . . security officer is not a peace officer nor a public safety officer as defined in Section 3301 of the Government Code. A sheriff's . . . security officer may carry or possess a firearm, baton, and other safety equipment and weapons authorized by the sheriff . . . while performing the duties authorized in this section, . . ." Assuming, arguendo, that transportation and guard functions are concurrent assignments for a single officer, we tend to agree. How could an officer charged under section 831.4 to protect "locations or facilities as directed by the sheriff" (and only incidentally patrons and employees) simultaneously be charged with the section 831 duty to maintain custody of prisoners (patrons of the jail?) and perform tasks related to the operation of a local detention facility (and only incidentally protect the facility)? May an officer carry a firearm as a section 831.4 sheriff's security officer while being forbidden to carry or possess firearms in the performance of his or her section 831 duties? The duties clash.

However, we do not decide this issue because we consider the point moot in light of section 831.5 now in effect, and the expiration of the Agreement on June 4, 2001.

To summarize, substantial evidence supports the trial court's finding that the correctional officers did not become section 830.1, subdivision (a) deputy sheriffs under the Agreement. The sheriff did not provide the correctional officers with deputy sheriff badges, nor were the correctional officers sworn as sheriff's deputies even though they were sworn as peace officers by Correction. Since the correctional officers never became peace officers, they

are not being forced to return to custodial officer status in violation of Government Code section 26605.1. The Sheriff is not obliged to provide correctional officers with deputy sheriff POST training. The trial court did not abuse its discretion in declining to make the declaration requested by plaintiffs and in denying mandamus.

### DISPOSITION

The judgment is affirmed.

Elia, J., and Mihara, J., concurred.

A petition for a rehearing was denied September 26, 2001, and appellants' petition for review by the Supreme Court was denied November 14, 2001. Kennard, J., was of the opinion that the petition should be granted.