[No. B188777. Second Dist., Div. Two. Sept. 12, 2006.]

COMMITTEE FOR RESPONSIBLE SCHOOL EXPANSION, Plaintiff and Appellant, v.
HERMOSA BEACH CITY SCHOOL DISTRICT, Defendant and Respondent.

1180

## COUNSEL

Angelo & Di Monda, Christopher E. Angelo, Joseph Di Monda; Law Offices of Anthony Kornarens and Anthony Kornarens for Plaintiff and Appellant.

Roger Creighton as Amicus Curiae for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Terry T. Tao and Jeremy K. Brust for Defendant and Respondent.

## OPINION

**DOI TODD, J.**—Plaintiff and appellant the Committee for Responsible School Expansion appeals from a judgment entered following the denial of its petition for writ of mandate seeking to enjoin defendant and respondent the Hermosa Beach City School District (the School District) from expending school bond money to construct a gymnasium. Appellant contends that the California Constitution prohibits the expenditure because construction of a "gymnasium" was not among the "list of the specific school facilities projects to be funded" in the bond ballot measure approved by the voters. (See Cal. Const., art. XIII A, § 1, subd. (b)(3)(B).)

We find no merit to this contention. The School District satisfied the Constitution's accountability requirements by preparing and making available the required list of projects, which included a gymnasium. Neither the state Constitution nor the Education Code requires that the list of specific school facilities projects to be funded through a bond measure be included on the ballot. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 24, 2002, the School District Board of Trustees approved a resolution ordering an election on the question of whether $13.6 million in School District bonds should be issued (the Resolution). The Resolution stated that the election would·be subject to the provisions of Proposition 39. Two exhibits were attached to the Resolution. Exhibit A contained the text of the ballot measure that would be submitted to the voters, which provided: " 'To improve the quality of education, shall the Hermosa Beach City School District be authorized to finance classroom modernization; upgrade electrical systems to improve access to technology; make health, safety, and security improvements; upgrade plumbing, heating, ventilation, and air conditioning systems; construct classrooms and science labs; acquire property, and qualify for State funds.up to $1,700,000 by issuing $13,600,000 in bonds, within maximum legal interest rates, with annual audits, a citizens' oversight committee and no money for administrators' salaries?' " Exhibit B, entitled "Full Text Ballot Proposition," first indicated that the text of exhibit A would be presented to the voters; it then outlined the needs that the School District Board of Trustees had evaluated and specified a list of school and classroom improvements on which bond funds would be spent. Included on the list was "[c]onstruct a gymnasium for school and community use."

In accordance with the Resolution, Measure J, entitled "Hermosa Beach City School District Special Election," appeared on the November 5, 2002 ballot.[1] The text of Measure J was identical to exhibit A of the Resolution. The text of exhibit B did not appear on the ballot. Within the ballot, county counsel's impartial analysis of Measure J provided in part: "As required by law, the Board of Trustees of the District . . . has adopted a list of the specific school facilities projects to be funded by the sale of the bonds. The Board of Trustees will conduct annual, independent financial and performance audits to ensure that funds received from the sale of the bonds will have been expended only on the specific projects listed, and will appoint a citizen's oversight committee to inform the public on expenditures." Ballot arguments both in favor of and in opposition to Measure J discussed that the bonds would be used to build a gymnasium. The argument in favor of Measure J stated that the measure would improve Hermosa Beach schools by "[b]uilding a new gym/multipurpose facility for school and community use," while the

---

[1] Earlier, we granted both appellant's and the School District's requests for judicial notice of election-related materials. We deny appellant's second request for judicial notice of documents related to a recently defeated bond measure placed on the ballot by the School District. (See *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1089, fn. 4 [6 Cal.Rptr.3d 457, 79 P.3d 569] [court may take judicial notice of materials relevant to the action].)

argument against the measure several times criticized the use of bond funds for "a costly gym."

Measure J passed, garnering 65 percent of the vote. For the next two years, the School District and the community developed a plan for the expenditure of the Measure J funds. The resulting project included the construction of a gymnasium, multipurpose facilities, science laboratories, classrooms, a library and storage areas at the Hermosa Valley School. In March 2005, the School District certified an environmental impact report (EIR) for the project.

On April 8, 2005, appellant filed a petition for writ of mandate, challenging the legality of the School District's approval of the plan for development of the gymnasium and seeking a peremptory writ of mandate requiring the School District to set aside and vacate any project approvals. Its first amended petition, filed two weeks later, added a cause of action alleging that "[t]he School Board's March 9, 2005 authorization of the expenditure of Measure J funds on a gymnasium project that was not disclosed to voters on the ballot violates the requirements of the California Constitution and The Strict Accountability in Local School Construction Bonds Act of 2000."

In August 2005, the trial court denied appellant's request for a preliminary injunction. In concluding that appellant was unlikely to succeed on the merits, the trial court found that Measure J was in compliance with the California Constitution, as there was no requirement that the "list of the specific school facilities projects to be funded" must appear in the ballot. (See Cal. Const., art. XIII A, § 1, subd. (b)(3)(B).) The trial court reasoned that the fact a list of projects was prepared and available to voters, coupled with the repeated references to a gymnasium in the ballot arguments, adequately satisfied the Constitution's accountability requirements.

Following briefing in October 2005, the trial court denied appellant's petition for writ of mandate in November 2005.[2] It did not revisit the issue of whether Measure J violated the California Constitution, finding that it had already sufficiently addressed that issue in connection with the denial of the preliminary injunction.

This appeal followed.

## DISCUSSION

Appellant challenges the judgment, asserting that the trial court erred in finding that Measure J satisfied the constitutional requirement that a school

---

[2] Both in connection with its denial of appellant's request for a preliminary injunction and denial of the petition for writ of mandate, the trial court reached several issues concerning the EIR which appellant has not challenged on appeal.

bond proposition include a "list of the specific school facilities projects to be funded . . . ." (Cal. Const., art. XIII A, § 1, subd. (b)(3)(B).) We find no error.

"In reviewing a trial court's judgment on a petition for writ of ordinary mandate, the appellate court applies the substantial evidence test to the trial court's factual findings, but exercises its independent judgment on legal issues, such as the interpretation of statutes. [Citation.]" (*Abbate v. County of Santa Clara* (2001) 91 Cal.App.4th 1231, 1239 [111 Cal.Rptr.2d 412].) Thus, to the extent that the trial court's decision does not turn on disputed facts, we review de novo the trial court's interpretation of the constitutional provisions at issue. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 [129 Cal.Rptr.2d 811, 62 P.3d 54]; *San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1398 [44 Cal.Rptr.3d 128] (*San Lorenzo*).) Our independent reading of the California Constitution yields the same conclusion as the trial court: Nothing mandates that the accountability requirements set forth in article XIII A, section 1, subdivision (b)(3), including a list of specific school facilities projects, be made a part of the ballot. (See also Ed. Code, §§ 15122, 15272, 15346 [specifying bond measure ballot requirements].) The inclusion of the project list in the Resolution, coupled with a discussion of that list in the ballot pamphlet, more than satisfied the constitutional provisions.

I. *Applicable Constitutional and Statutory Provisions Governing School Bond Financing.*

" 'The usual method of funding new school construction in California has been for school districts to obtain voter approval for the issuance of general obligation bonds. . . . The bonds are repaid by an annual levy of an ad valorem tax on real (and certain personal) property located within the area of the district.' [Citation.]" (*San Lorenzo, supra,* 139 Cal.App.4th at p. 1395.) School bond financing is governed by various provisions of law—some constitutional and some statutory. (*Ibid.*)

Proposition 39, also known as the "Smaller Classes, Safer Schools, and Financial Accountability Act," amended the California Constitution in November 2000 to create an exception to the 1 percent limit on ad valorem taxes on real property and to reduce from two thirds to 55 percent the number of voters required to approve any bonded indebtedness proposed to be incurred by a school district for the "construction, reconstruction, rehabilitation, or replacement of school facilities." (Prop. 39, § 4, as approved by voters, Gen. Elec. (Nov. 7, 2000); Cal. Const., art. XIII A, § 1, subd. (b)(3);

see also *Ridgecrest Charter School v. Sierra Sands Unified School Dist.* (2005) 130 Cal.App.4th 986, 993 [30 Cal.Rptr.3d 648].)

█ Because the resolution of this matter hinges in large part on the language of the relevant constitutional provision, we quote it at length. California Constitution article XIII A, section 1, subdivision (b) provides that the 1 percent limitation on any ad valorem tax on real property "shall not apply to ad valorem taxes or special assessments to pay the interest and redemption charges on any of the following: [¶] . . . [¶] (3) Bonded indebtedness incurred by a school district, community college district, or county office of education for the construction, reconstruction, rehabilitation, or replacement of school facilities, including the furnishing and equipping of school facilities, or the acquisition or lease of real property for school facilities, approved by 55 percent of the voters of the district or county, as appropriate, voting on the proposition on or after the effective date of the measure adding this paragraph. *This paragraph shall apply only if the proposition approved by the voters and resulting in the bonded indebtedness includes all of the following accountability requirements*: [¶] (A) A requirement that the proceeds from the sale of the bonds be used only for the purposes specified in Article XIII A, Section 1(b)(3), and not for any other purpose, including teacher and administrator salaries and other school operating expenses. [¶] (B) *A list of the specific school facilities projects to be funded and certification that the school district board, community college board, or county office of education has evaluated safety, class size reduction, and information technology needs in developing that list.* [¶] (C) A requirement that the school district board, community college board, or county office of education conduct an annual, independent performance audit to ensure that the funds have been expended only on the specific projects listed. [¶] (D) A requirement that the school district board, community college board, or county office of education conduct an annual, independent financial audit of the proceeds from the sale of the bonds until all of those proceeds have been expended for the school facilities projects." (Italics added.)

Legislation implementing Proposition 39 is codified in sections 15264 through 15284 of the Education Code. (*San Lorenzo, supra*, 139 Cal.App.4th at p. 1396, fn. 9.) Pertinent here, Education Code section 15272 provides: "In addition to the ballot requirements of Section 15122 . . . for bond measures pursuant to this chapter, the ballot shall also be printed with a statement that the board will appoint a citizens' oversight committee and conduct annual independent audits to assure that funds are spent only on school and classroom improvements and for no other purposes." Education Code section 15122, which remained unchanged after the enactment of Proposition 39, specifies the form of the ballot for a bond election:

"The words to appear upon the ballots shall be 'Bonds—Yes' and 'Bonds—No,' or words of similar import. A brief statement of the proposition, setting forth the amount of the bonds to be voted upon, the maximum rate of interest, and the purposes for which the proceeds of the sale of the bonds are to be used, shall be printed upon the ballot. No defect in the statement other than in the statement of the amount of the bonds to be authorized shall invalidate the bonds election."

■ Appellant brought this action pursuant to Education Code section 15284, which authorizes "[a]n action to obtain an order restraining and preventing any expenditure of funds received by a school district . . . through the sale of bonds authorized by this chapter pursuant to paragraph (3) of subdivision (b) of Section 1 of Article XIII A of the California Constitution" where it appears that the expenditure is in violation of or for purposes other than those specified by the California Constitution, article XIII A, section 1, subdivision (b)(3). (Ed. Code, § 15284, subd. (a).)

II. *The School District's Measure J Satisfied the Applicable Constitutional and Statutory Provisions.*

Because Measure J passed by less than a two-thirds majority, the requirements imposed by Proposition 39 apply. (Cal. Const., art. XIII A, § 1, subd. (b)(3); *San Lorenzo, supra,* 139 Cal.App.4th at p. 1396, fn. 9; *Ridgecrest Charter School v. Sierra Sands Unified School Dist., supra,* 130 Cal.App.4th at p. 993.) According to appellant, those requirements mandate that the "list of the specific school facilities projects to be funded" be included on the ballot. (Cal. Const., art. XIII A, § 1, subd. (b)(3)(B).) As it is undisputed that Measure J did not include that list—and omitted the construction of a gymnasium among the projects identified—appellant asserts that the School District should be enjoined from expending any funds raised by Measure J on a gymnasium. (See Ed. Code, § 15284.) We disagree.

■ To interpret both constitutional and statutory provisions, we first look to their plain language. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934]; *Penner v. County of Santa Barbara* (1995) 37 Cal.App.4th 1672, 1677 [44 Cal.Rptr.2d 606].) "Words used in a statute or constitutional provision should be given the meaning they bear in ordinary use. [Citation.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters)." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

■ According to the plain language of article XIII A, section 1, subdivision (b)(3) of the California Constitution, a school district's bond indebtedness for certain school facilities projects may be approved by only 55 percent of the voters "if the proposition approved by the voters and resulting in the bond indebtedness includes" a set of four enumerated accountability requirements. (Cal. Const., art. XIII A, § 1, subd. (b)(3).) Those requirements are: (1) That the proceeds from the sale of the bonds be used only for the purposes specified in that section and not for any other purpose, such as salaries or operating expenses; (2) a list of the specific school facilities to be funded and the school district's certification that it has evaluated certain factors in developing that list; (3) that the school district board conduct an annual, independent performance audit to ensure that the funds have been expended only on the specific projects listed; and (4) that school district board conduct an annual, independent financial audit of the proceeds from the sale of the bonds until all proceeds have been expended. (Cal. Const., art. XIII A, § 1, subd. (b)(3)(A)–(D).)

" 'The constitution is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.' [Citations.]" (*Delaney v. Superior Court, supra,* 50 Cal.3d at p. 799.) The Constitution plainly requires that the "proposition," not the ballot, "include[]" these accountability requirements. Section 1 of article XIII makes no mention of either the term "ballot" or "measure." There is a distinct difference between a proposition and a ballot measure. The Election Code imposes a 75-word limitation on ballot measures. (Elec. Code, § 13247, subd. (a) ["The statement of all measures submitted to the voters shall be abbreviated on the ballot. The statement shall contain not more than 75 words of each measure to be voted on, followed by the words, 'Yes' and 'No' "].) In view of this limitation, it would be virtually impossible for a school district to set forth its compliance with all accountability requirements in a ballot measure.

Even more importantly, legislation enacted in connection with the passage of Proposition 39—remarkably cited by neither party—confirms that the list of specific school facilities to be funded need not appear on the ballot. Education Code section 15272 became operative when the voters approved Proposition 39. (Stats. 2000, ch. 44, § 6.) Unofficially labeled "Additional ballot requirement," it provides: "In addition to the ballot requirements of Section 15122 and the ballot provisions of this code applicable to governing board member elections, for bond measures pursuant to this chapter, the ballot shall also be printed with a statement that the board will appoint a citizens' oversight committee and conduct annual independent audits to

assure that funds are spent only on school and classroom improvements and for no other purposes." (Ed. Code, § 15272.) In pertinent part, Education Code section 15122 requires that "[a] brief statement of the proposition, setting forth the amount of the bonds to be voted upon, the maximum rate of interest, and the purposes for which the proceeds of the sale of the bonds are to be used, shall be printed upon the ballot." (See also Ed. Code, § 15346 [same requirements for a ballot proposition].) None of these provisions states that either the list of specific school facilities projects or the school district's certification of the factors it evaluated in developing that list must appear on the ballot.

 The School District here satisfied the ballot requirements outlined in the Education Code. In compliance with Education Code section 15272, Measure J included a statement that there would be "annual audits, a citizens' oversight committee and no money for administrators' salaries[.]" The measure included a brief statement of the proposition "[t]o improve the quality of education," set forth that the bonds would be in the amount of $13.6 million, stated that they would be "within maximum legal interest rates," and indicated the type of school improvements for which the bond proceeds would be used. (Ed. Code, § 15122.) Beyond the measure itself, the ballot pamphlet also included statements in county counsel's impartial analysis touching on each of the Education Code requirements as well as the Constitution's accountability requirements.[3]

The School District likewise satisfied the constitutional provision that the proposition "include[]" the accountability requirements. Exhibit B, the "Full Text Ballot Proposition" attached to the Resolution, included the list of specific school facilities projects to be funded by the sale of the bonds. On

---

[3] In full, the analysis provided: "Approval of Measure J would authorize the Hermosa Beach City School District ('District') to issue up to $13,600,000 in general obligation bonds. [¶] Funds received from the sale of the bonds would be used only for the construction, rehabilitation and equipping of District facilities, or the acquisition or lease of real property for District facilities. No funds may be used for teacher or administrator salaries, or other school operating expenses. [¶] As required by law, the Board of Trustees of the District ('Board of Trustees') has adopted a list of the specific school facilities projects to be funded by the sale of the bonds. The Board of Trustees will conduct annual, independent financial and performance audits to ensure that funds received from the sale of the bonds will have been expended only on the specific projects listed, and will appoint a citizen's oversight committee to inform the public on expenditures. [¶] The bonds would be issued and sold at an interest rate not to exceed the maximum rate allowed by law, and would be repaid by a property tax levied upon real property located within the District over a period not to exceed forty (40) years. The tax rate levied as the result of approval of this Measure shall be no more than $30 per $100,000 of taxable property value within the District. [¶] This Measure requires a fifty-five percent (55%) vote for passage."

that list were a number of particular items, including the construction of a gymnasium, that the School District determined would meet its needs. Exhibit B likewise included the remaining accountability requirements, providing statements that the bonds would be used only for the specified purposes and that annual, independent performance and financial audits would be conducted to ensure compliance. (See Cal. Const., art. XIII A, § 1, subd. (b)(3)(A)–(D).)

Appellant's arguments fail to persuade us that the School District's construction of a gymnasium constitutes an expenditure in violation of article XIII A, section 1, subdivision (b)(3) of the California Constitution. First, appellant contends that the Resolution's exhibit A, not exhibit B, represents the full proposition and that, as a result, the proposition itself did not include the requisite list of specific school facilities projects. After the title "Full Text Ballot Proposition of the Hermosa Beach City School District Bond Measure Election November 5, 2002," exhibit B states that "[t]he following is the full proposition presented to the voters by the Hermosa Beach City School District," and then repeats the text of exhibit A. Immediately thereafter, the exhibit proceeds to set forth the School District's compliance with the Constitution's accountability requirements and to specify "the following school and classroom improvements" on which bond funds would be spent. Appellant argues that given the layout of the text of the document, it is reasonable to construe the initial reference to the "full proposition" as applying only to the text of exhibit A as opposed to the full document.

We do not find appellant's interpretation to be a reasonable one. Exhibit A represents the 75-word summary of the proposition that must appear on the ballot. (Elec. Code, § 13247, subd. (a).) Construing exhibit B as setting forth the full proposition as being exhibit A renders exhibit B duplicative of exhibit A. Courts should interpret statutes or written instruments so as to give force and effect to every provision and not in a way which would render words or clauses nugatory, inoperative or meaningless. (See Civ. Code, § 1858; *Titan Corp. v. Aetna Casualty & Surety Co.* (1994) 22 Cal.App.4th 457, 473–474 [27 Cal.Rptr.2d 476].) Construing exhibit B as the full proposition satisfies this principle. Equally as significant, statements in the ballot pamphlet—including the impartial analysis and the arguments for and against the proposition—refer to the full proposition as encompassing the matters contained in exhibit B, characterizing it as including the list of specific school facilities projects and as resulting in the building of a gymnasium. (See *Kennedy Wholesale, Inc. v. State Bd. of Equalization* (1991) 53 Cal.3d 245, 250 [279 Cal.Rptr. 325, 806 P.2d 1360] [considering ballot pamphlet arguments in interpreting scope of proposition].) Accordingly, we reject appellant's interpretation of the Resolution's exhibits and conclude

that exhibit B to the Resolution properly included the list of specific school facilities projects as well as the remaining accountability requirements.

Alternatively, appellant asserts that even if exhibit B is considered to satisfy the accountability requirements by setting forth the project list, the School District violated the intent of Proposition 39 by not including the list of specific school facilities projects on the ballot. According to the Historical Notes for article XIII A, section 1, the purpose and intent of Proposition 39 were to "ensure that school districts are accountable for prudent and responsible spending for school facilities," and one way in which that purpose is accomplished is "[t]o ensure that before they vote, voters will be given a list of specific projects their bond money will be used for[.]" (Cal. Const., art. XIII A, § 1, reprinted at Historical Notes, 2A West's Ann. Cal. Const. (2007 supp.) foll. art. XIII A p. 57.) As the trial court pointed out, it is unclear what "given" means: "Does it mean 'given' being made available or 'given' mean actually given? Must it be listed in the ballot? If it was 'must be listed in the ballot,' I don't know why it wasn't stated in the measure that it must be listed in the ballot proposition itself. Therefore, the framers seem to state as long as there is a list, a list is available, that is sufficient." The trial court found it particularly significant that the word "given" was mentioned only in the historical notes and not in the proposition itself.

We agree with the trial court that "given" cannot be construed as "required to be on the ballot" in view of the absence of any language in the Constitution requiring that the project list be included on the ballot and the omission of any such requirement in the Education Code ballot provisions. (See *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 844 [102 Cal.Rptr.2d 719, 14 P.3d 930] ["a command that a constitutional provision or a statute be liberally construed 'does not license either enlargement or restriction of its evident meaning' "].) The ballot pamphlet informed the voters that "a list of the specific school facilities projects to be funded by the sale of the bonds" had been prepared as required by law and the list was available to the public. These actions satisfied both the express language and intent of the Constitution.

■ Third, at both appellant's and the School District's request, we have taken judicial notice of a number of different ballots reflecting school district bond measures. Appellant contends these ballots establish that other school districts interpret the Constitution as requiring that the list of specific school facilities projects appear on the ballot. Even if that characterization were accurate, the manner in which other school districts choose to submit their ballot propositions would not convince us that a different construction of the relevant constitutional provision is warranted. In any event, what the ballots

show is that the list of specific school facilities projects *may* appear on the ballot. A review of the ballots demonstrates that, in some instances, the full text of the proposition, including the list of specific school facilities projects, follows the summary of the measure on the ballot. (See Elec. Code, § 13247, subd. (a).) Yet in other instances, the full text of the proposition—and hence the project list—does not appear on the ballot. Rather, like Measure J here, the summary of the measure is followed by an impartial analysis indicating the school board's compliance with the accountability requirements and by arguments for and against the proposition. While perhaps the better practice is to include the list of specific school facilities projects on the ballot when feasible, there is no constitutional or statutory requirement mandating its inclusion on the ballot.

We address one final argument. Amicus curiae for appellant contends that the construction of a gymnasium with Measure J funds violates the contractual relationship between the public entity and the voters that arises in a bond election. He argues that because "gymnasium" was not among the projects appearing on the ballot, the voters could not have intended to approve the use of bond proceeds for that project. Again, we disagree.

In *Associated Students of North Peralta Community College v. Board of Trustees* (1979) 92 Cal.App.3d 672, 676–677 [155 Cal.Rptr. 250], the court explained that earlier decisions had alternately described the relationship between the public entity and the electorate arising out of a bond election as either strictly contractual or analogous to a contract. Regardless of the characterization, courts have uniformly agreed that four elements generally comprise the "contract." (*Ibid.*) They are: "(1) the statutes creating the bonding entity and authorizing bonded indebtedness; (2) '[t]he resolution by which the bonding entity resolves to submit the issue to [its] electors;' (3) 'the ballot proposition submitted to the voters'; and (4) the voters' assent or ratification." (*Monette-Shaw v. San Francisco Bd. of Supervisors* (2006) 139 Cal.App.4th 1210, 1215 [43 Cal.Rptr.3d 659]; accord, *San Lorenzo, supra,* 139 Cal.App.4th at p. 1397; *Peralta, supra,* at pp. 677–678.) *Peralta* emphasized that the resolution whereby the bonding entity resolves to submit the matter to the electorate is an important element of the contract. (*Id.* at p. 677; see also *San Lorenzo, supra,* at p. 1398.) Here, the Resolution's exhibit B specifically stated that bonds funds would be used to "[c]onstruct a gymnasium for school and community use." Accordingly, the construction of a gymnasium must be regarded as a part of any contract that was formed between the School District and the Measure J voters. The expenditure of Measure J funds on a gymnasium is consistent with the voters' intent.

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

Boren, P. J., and Ashmann-Gerst, J., concurred.

A petition for a rehearing was denied October 5, 2006, and appellant's petition for review by the Supreme Court was denied December 13, 2006, S147418.