[No. A127698. First Dist., Div. One. Oct. 21, 2011.]

JEFFREY S. GANANIAN, Plaintiff and Appellant, v.
STEPHEN M. WAGSTAFFE, as District Attorney, etc., Defendant and
Respondent.

COUNSEL

Law Offices of Jeffrey S. Gananian and Jeffrey S. Gananian for Plaintiff and Appellant.

John C. Beiers, County Counsel, and Ceide Zapparoni, Deputy County Counsel, for Defendant and Respondent.

OPINION

**MARGULIES, J.**—Jeffrey S. Gananian appeals from a judgment dismissing his cause of action for declaratory relief against former San Mateo County District Attorney James P. Fox. Gananian sought a declaration that Education Code section 15288 required Fox to investigate and prosecute alleged violations of law associated with the expenditure of voter-approved school bond funds. We disagree, and affirm the judgment.

## I. BACKGROUND

In April 2009, Gananian filed his original complaint against the La Honda-Pescadero Unified School District (the District) and its then superintendent, Timothy Beard, alleging waste and misuse of bond proceeds obtained

pursuant to a districtwide school construction bond measure known as "Measure I." The suit was filed under Education Code section 15284, which authorizes taxpayer suits to enjoin the misuse of bond funds obtained for school construction and rehabilitation from bond measures approved by voters under the provisions of Proposition 39. Proposition 39, known as the "Smaller Classes, Safer Schools and Financial Accountability Act," amended the California Constitution in 2000 to, among other things, "reduce from two-thirds to 55 percent the number of voters required to approve any bonded indebtedness proposed to be incurred by a school district for the 'construction, reconstruction, rehabilitation, or replacement of school facilities.' " (*Ridgecrest Charter School v. Sierra Sands Unified School Dist.* (2005) 130 Cal.App.4th 986, 993 [30 Cal.Rptr.3d 648].) Education Code section 15264 et seq. (the School Bond Act), including section 15284, in part codifies Proposition 39. (*Committee for Responsible School Expansion v. Hermosa Beach City School Dist.* (2006) 142 Cal.App.4th 1178, 1185 [48 Cal.Rptr.3d 705].)[1]

After filing the suit, Gananian wanted to add allegations and claims that Beard and the District had violated the Political Reform Act of 1974 (PRA) (Gov. Code, § 81000 et seq.) by having financial conflicts of interest and seeking to hide them by violating PRA reporting requirements. On April 24, 2009, Gananian sent a letter to the San Mateo County District Attorney, James P. Fox, requesting permission, as required by Government Code section 91007,[2] to pursue civil claims under the PRA.[3] As a statement of the grounds for believing a cause of action existed, Gananian's letter attached a letter written the previous day by an associate of Gananian's, Bryan Burns, to the

---

[1] The School Bond Act provision in issue in this case, Education Code section 15288, was not part of the text of Proposition 39. (Voter Information Guide, Gen. Elec. (Nov. 7, 2000) text of Prop. 39, pp. 73–74.)

[2] Government Code section 91007 provides in relevant part: "(a) Any person, before filing a civil action pursuant to Sections 91004 and 91005, must first file with the civil prosecutor a written request for the civil prosecutor to commence the action. The request shall include a statement of the grounds for believing a cause of action exists. The civil prosecutor shall respond to the person in writing, indicating whether he or she intends to file a civil action. [¶] (1) If the civil prosecutor responds in the affirmative and files suit within 120 days from receipt of the written request to commence the action, no other action may be brought . . . . [¶] (2) If the civil prosecutor responds in the negative within 120 days from receipt of the written request to commence the action, the person requesting the action may proceed to file a civil action upon receipt of the response from the civil prosecutor. If . . . the civil prosecutor does not respond within 120 days, the civil prosecutor shall be deemed to have provided a negative written response . . . ."

[3] Fox retired as district attorney in 2010, thus the current district attorney, Stephen M. Wagstaffe is now the appropriate named party for this appeal. But since Gananian stated his claims against Fox in his capacity as district attorney in the relevant trial court pleadings, we will continue to refer to the respondent party in this appeal as Fox.

chair of the Measure I bond oversight committee (BOC)[4] asserting (1) Burns had reviewed all of the "Form 700's"[5] filed with the county for the past four years; (2) members of the BOC and a separate "Parcel Tax Committee" had not filed form 700's, nor had any District contractors; and (3) the failure to file the forms was "a big red flag that there may have been conflicts-of-interest . . . intentionally hidden from public view."

On May 13, 2009, Fox responded to Gananian by letter advising him, through a deputy, his office could "find no adequate basis [in Gananian's letter and attachment] for either filing a cause of action or granting permission to do so."[6] The response explained that although Burns stated he had reviewed the form 700's, no specific information was provided regarding the individuals involved, the committees on which they served, or what each was alleged to have done or failed to do. Fox further noted there was no indication why the contractors would have been required to file form 700's since they were not government employees or officials.

On May 27, 2009, Gananian filed his first amended and supplemental complaint (FAC). It contained four causes of action. The first two realleged violations of the School Bond Act by Beard and the District, and sought to prevent waste and misuse of Measure I bond funds. The third cause of action alleged a controversy existed between Gananian and Fox over whether Gananian's letter of April 24, 2009, constituted a "written request with a sufficient statement of the grounds for believing that a cause of action exist[ed] under [Government Code section 91004 or 91005]," and sought a declaration Gananian had set forth a sufficient written request and had permission to proceed with an action under the PRA. The fourth cause of action—made conditional on the outcome of the third cause of action—sought civil penalties and other relief under the PRA based on allegations that Beard and unnamed Doe defendants violated the PRA by filing fabricated form 700 statements, failing to determine whether required documents had been filed, and failing to take various steps to ensure that members of the BOC and Parcel Tax Committee filed statements of economic interests when required to do so.

---

[4] In accordance with Education Code section 15278, Measure I required the appointment of a citizens' oversight committee to oversee the expenditure of bond funds.

[5] Form 700, titled "Statement of Economic Interests," is a standard form California public officials and employees must file to disclose their financial holdings. (See Gov. Code, §§ 87202, 87302; *California Family Bioethics Council, LLC v. California Institute for Regenerative Medicine* (2007) 147 Cal.App.4th 1319, 1364–1365 [55 Cal.Rptr.3d 272].)

[6] Nothing in Government Code section 91007 requires parties contemplating civil actions under the PRA to obtain a civil prosecutor's permission to file suit. Upon the party's request, the prosecutor's office can either file suit or decline to file suit but it cannot prevent the party from commencing suit if it decides not to proceed.

On August 24, 2009, Fox demurred to the FAC and his office wrote a second letter responding to Gananian's letter of April 24. The demurrer argued there was no controversy between the parties because Fox had declined to pursue a PRA lawsuit and, therefore, Government Code section 91007 expressly granted Gananian permission to proceed with his own civil lawsuit for violations of the PRA. Fox asked the court to take judicial notice of the August 24 letter, which reiterated his office's decision not to proceed with a civil prosecution, but omitted any assertion—which would have been contrary to Government Code section 91007—that Gananian was not free to or did not have "permission" to file his own civil action.

In his opposition to the demurrer, Gananian made no argument there was an actual controversy over whether he was free to proceed with his own PRA action. Instead, he pivoted to a new theory as to the nature of his justiciable controversy with Fox's office. He asserted the parties' actual controversy was over whether or not Fox had an *affirmative, nondiscretionary duty* to investigate and prosecute his allegations concerning the failure of school personnel and contractors to file form 700's. Gananian maintained section 15288 of the School Bond Act created such a duty: "It is the intent of the Legislature that upon receipt of allegations of waste or misuse of bond funds authorized in this chapter, appropriate law enforcement officials shall expeditiously pursue the investigation and prosecution of any violation of law associated with the expenditure of those funds."[7] (Ed. Code, § 15288.) According to Gananian, because all of his form 700 allegations were "associated with the expenditure of" Measure I funds, Fox had a mandatory duty under Education Code section 15288 to expeditiously investigate and prosecute them, notwithstanding the permissive terms of Government Code section 91007. Far from ending the parties' controversy, Gananian insisted Fox's letter of August 24 proved Fox was declining to perform a duty Gananian contended was required of him by law.

The trial court granted Fox's unopposed request for judicial notice and sustained his demurrer without leave to amend. At oral argument, the trial court rejected Gananian's claim that Proposition 39 took away the district attorney's discretion over whether to prosecute. In its written order, the court noted the district attorney's office's concessions that (1) it had declined to prosecute the PRA action as requested by Gananian and (2) the only prerequisite for Gananian to proceed with his own action under Government Code section 91007 had therefore also been satisfied. Since there was no

---

[7] The School Bond Act also includes a preamble stating legislative intent as to a number of aspects of the legislation, including the following: "It is the intent of the Legislature that . . . [¶] . . . [¶] . . . unauthorized expenditures of school construction bond revenues are vigorously investigated, prosecuted, and that the courts act swiftly to restrain any improper expenditures." (Ed. Code, § 15264, subd. (d).)

controversy, the court found Gananian's third cause of action was moot, and sustained the demurrer on that basis without leave to amend. Gananian timely appealed from the ensuing judgment of dismissal.

## II. DISCUSSION

On appeal, Gananian contends the facts alleged in his third cause of action support a cause of action for equitable relief to enjoin and compel the district attorney to investigate and prosecute any alleged violations of law associated with the expenditure of Measure I funds, including not only his claims of PRA violations, but also any other allegations of which the district attorney has notice.[8] He contends his right to relief arises under Education Code section 15288.

"On appeal from a judgment of dismissal entered after a demurrer has been sustained without leave to amend, unless failure to grant leave to amend was an abuse of discretion, the appellate court must affirm the judgment if it is correct on any theory. [Citations.] If there is a reasonable possibility that the defect in a complaint can be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend. [Citation.] The burden is on the plaintiff, however, to demonstrate the manner in which the complaint might be amended." (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].) "Mistaken labels and confusion of legal theory are not fatal; if [the] complaint states a cause of action on any theory . . . [citations] [the] action cannot be defeated merely because it is not properly named." (*Porten v. University of San Francisco* (1976) 64 Cal.App.3d 825, 833 [134 Cal.Rptr. 839].)

In our view, the appeal in this case presents two distinct issues of statutory interpretation. First, does Education Code section 15288 create an affirmative,

---

[8] In that connection, we have taken judicial notice of certain documents in the record of which the trial court took judicial notice: (1) a complaint filed by the District against the company it hired to plan, design, and manage its Measure I bond program and related individuals, alleging causes of action, among others, for fraud and false claims and (2) Gananian's April 24, 2009 letter to Fox requesting prosecution under Government Code section 91007. We have also taken judicial notice of a 2009 report of the Little Hoover Commission entitled "Bond Spending: Expanding and Enhancing Oversight," containing some historical background about Proposition 39. We reserved a decision on Gananian's request that we also take judicial notice of (1) certain emergency regulations of the Division of the State Architect, (2) Gananian's attestation based on his own research that there have been no criminal prosecutions under Education Code section 17312 since about 1982, and (3) declarations by Gananian and Bryan Burns regarding alleged illegal or unsafe school buildings located in the District and elsewhere. These items were not judicially noticed in the trial court, and are not matters of which we must take notice. (See Evid. Code, § 459.) They are also not relevant to the issue of law before this court. We therefore decline Gananian's request.

nondiscretionary duty on the part of district attorneys to investigate and prosecute alleged crimes related to the expenditure of Proposition 39 bond funds? Second, assuming for the sake of analysis Education Code section 15288 does impose an obligatory duty on district attorneys, does it give persons in Gananian's position a private right of action to enforce that duty? For the reasons explained below, we answer both questions in the negative.

■ There is no simple, mechanical test for determining whether a provision of a statute should be given mandatory effect. (*Fox v. County of Fresno* (1985) 170 Cal.App.3d 1238, 1242 [216 Cal.Rptr. 879].) We construe the statute as a whole and consider the legislative intent in enacting it. (*Ibid.*; *Morris v. County of Marin* (1977) 18 Cal.3d 901, 909–910 [136 Cal.Rptr. 251, 559 P.2d 606] (*Morris*), disapproved on other grounds in *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 987–988, fn. 8 [42 Cal.Rptr.2d 842, 897 P.2d 1320].) A reviewing court must "examine the language, function and apparent purpose of" the statutory provision "to determine if [it] creates a mandatory duty." (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 500 [93 Cal.Rptr.2d 327, 993 P.2d 983].) "In construing a statute, a court may [also] consider the consequences that would follow from a particular construction and will not readily imply an unreasonable legislative purpose. . . . [A] practical construction is preferred." (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1147 [43 Cal.Rptr.2d 693, 899 P.2d 79].)

■ The use of the word "shall" in a statute is not dispositive of legislative intent. "[Not] every statute which uses the word 'shall' is obligatory rather than permissive. Although statutory language is, of course, a most important guide in determining legislative intent, there are unquestionably instances in which other factors will indicate that apparent obligatory language was not intended to foreclose a governmental entity's or officer's exercise of discretion." (*Morris, supra*, 18 Cal.3d at pp. 910–911, fn. 6.) As an example of a statute using the word "shall" that does not foreclose a governmental officer's discretion, *Morris* cites Government Code section 26501. (*Morris*, at p. 911.) That section provides in relevant part: "The district attorney shall institute proceedings before magistrates for the arrest of persons charged with or reasonably suspected of public offenses when he has information that such offenses have committed." (Gov. Code, § 26501.) ■ Notwithstanding section 26501's use of the word "shall," the courts have consistently held that prosecutors "ordinarily [have] sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 451 [279 Cal.Rptr. 834, 807 P.2d 1063].) As further discussed below, we believe

Education Code section 15288 must be construed in a manner consistent with this bedrock principle of prosecutorial discretion.

Ordinarily, the Legislature imposes legal duties on governmental officers in direct and unequivocal terms. Thus, by deleting the reference to legislative intent, Education Code section 15288 could have been written as follows to express an unambiguous legislative command: "Upon receipt of allegations of waste or misuse of bond funds authorized in this chapter, appropriate law enforcement officials shall expeditiously pursue the investigation and prosecution of any violation of law associated with the expenditure of those funds." Rather than directly compelling law enforcement officials to act in a specified manner, the provision was deliberately put in the form of a mere declaration of intent that they act in that manner. No other substantive provision of the School Bond Act was drafted in that fashion. Other provisions of the Act assign duties to the governing boards of districts (Ed. Code, §§ 15274, 15278, 15280), the county superintendent of schools (§ 15274), and citizens' oversight committees (§§ 15278, 15280, 15282), yet none of these substantive provisions is preceded by the words, "It is the intent of the Legislature that."

The unique wording of Education Code section 15288 suggests it was intended as a statement of legislative policy or preference rather than as a command. (See, e.g., 78 Ops.Cal.Atty.Gen. 18 (1995); 64 Ops.Cal.Atty.Gen. 769 (1981).) This view of the provision is reinforced by other factors. The "duties" required by the statute are stated in very general terms that would leave law enforcement guessing about how to comply with them. Is the duty to investigate triggered by *any* allegations of waste or misuse or only allegations meeting some standard of credibility or probable cause? Is there a duty to pursue a prosecution even if the investigation uncovers no offenses likely to be provable beyond a reasonable doubt? Does the word "expeditiously" translate into any specific deadlines or time lines? Can factors such as the prosecutor's office's heavy workload, understaffing, or inadequate funding excuse a deficiency in compliance with the statute? Education Code section 15288's vagueness about the actions it assertedly mandates, as well as its failure to specify any procedure for enforcing that mandate or consequences that will ensue if it is ignored all suggest it should be construed as an expression of policy rather than a legal mandate.

The provision's legislative history reinforces this view.[9] According to a bill analysis prepared in connection with the Assembly's final passage of the School Bond Act, Education Code section 15288 merely established "a law

---

[9] We may take judicial notice of legislative history materials on our own motion. (See *PG&E Corp. v. Public Utilities Com.* (2004) 118 Cal.App.4th 1174, 1204, fn. 25 [13 Cal.Rptr.3d 630].)

enforcement priority for investigation and prosecution for waste or misuse of bond funds." (Assem. Floor Analysis, Conc. in Sen. Amends. Assem. Bill No. 1908 (1999–2000 Reg. Sess.) as amended June 20, 2000, p. 3.) A floor analysis prepared on the Senate side, described the provision as "[s]tat[ing] the intent of the Legislature that law enforcement officials expeditiously pursue the investigation and prosecution of any violation of law associated with the expenditure of '55% approval bond' funds." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1908 (1999–2000 Reg. Sess.) as amended June 20, 2000, p. 4.) Neither of these bill analyses, nor any other record of the statute's legislative history that has been brought to our attention, suggests Education Code section 15288 was intended to impose a mandatory duty on any agency of law enforcement.[10]

■ Most significantly, construing Education Code section 15288 as a legislative command would clash with a basic precept of our criminal justice system—that the Constitution leaves the decision whether to pursue criminal charges against a person to the discretion of prosecutors subject only to the supervision of the Attorney General. Article III, section 3 of the California Constitution provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others *except as permitted by this Constitution.*" (Italics added.) As set forth in article V, section 13 of the Constitution, the investigation and prosecution of crimes are executive branch functions, supervised by the state Attorney General and executed by the state's district attorneys. Thus, *"the charging function of a criminal case* is *within the sole province of the executive branch,* which includes the Attorney General and the various district attorneys [citation][,] . . . while the legislative branch bears the sole responsibility and power to define criminal charges and to prescribe punishment . . . ." (*People v. Mikhail* (1993) 13 Cal.App.4th 846, 854 [16 Cal.Rptr.2d 641], italics added.)

■ "Subject to supervision by the Attorney General (Cal. Const., art. V, § 13; Gov. Code, § 12550) . . . the district attorney of each county *independently exercises all the executive branch's discretionary powers in the initiation and conduct of criminal proceedings.* [Citations.] *The district attorney's discretionary functions extend from the investigation and gathering of evidence relating to criminal offenses* [citation], *through the crucial*

---

[10] There is no indication the Legislature treated the provision as creating a state-mandated local program that would have required a subvention of funds to reimburse counties for the added costs. (See Cal. Const., art. XIII B, § 6.) According to the Legislative Counsel's Digest, the legislation enacting Education Code section 15288 did *not* establish a state-mandated local program. (Legis. Counsel's Dig., Assem. Bill No. 1908 (1999–2000 Reg. Sess.) 6 Stats. 2000, Summary Dig., pp. 16–17.)

*decisions of whom to charge and what charges to bring*, to the numerous choices the prosecutor makes at trial regarding 'whether to seek, oppose, accept, or challenge judicial actions and rulings.' " (*People v. Eubanks* (1996) 14 Cal.4th 580, 589 [59 Cal.Rptr.2d 200, 927 P.2d 310], italics added.)

■ Although codified by statute in Government Code sections 26500 and 26501, the principle of prosecutorial discretion is rooted in the separation of powers and due process clauses of our Constitution, and is basic to our system of criminal justice: "The decision as to appropriate charges is a matter of prosecutorial discretion. '[P]rosecutorial discretion is *basic to the framework of the California criminal justice system.* [Citations.] This discretion, though recognized by statute in California, is founded upon constitutional principles of separation of powers and due process of law.' " (*People v. Valli* (2010) 187 Cal.App.4th 786, 801 [114 Cal.Rptr.3d 335], italics added, quoting *People v. Jerez* (1989) 208 Cal.App.3d 132, 137 [256 Cal.Rptr. 31].) "The district attorney's function is quasi-judicial in nature [citation], and . . . he is vested with discretionary power in determining whether to prosecute in any particular case. *An unbroken line of cases in California* has recognized this discretion and its insulation from control by the courts . . . ." (*People v. Municipal Court* (1972) 27 Cal.App.3d 193, 207 [103 Cal.Rptr. 645], italics added.)

The prosecution's exclusive authority is well settled and rests in part on the complex considerations required for the effective administration of law enforcement: "*It is well settled* that the prosecuting authorities, exercising executive functions, ordinarily have the *sole discretion to determine whom to charge with public offenses and what charges to bring.* [Citations.] This prosecutorial discretion . . . arises from ' "the complex considerations necessary for the effective and efficient administration of law enforcement." ' [Citation.] The prosecution's authority in this regard is *founded, among other things, on the principle of separation of powers*, and generally is not subject to supervision by the judicial branch." (*People v. Birks* (1998) 19 Cal.4th 108, 134 [77 Cal.Rptr.2d 848, 960 P.2d 1073], italics added.)

■ In construing Education Code section 15288, we "presume . . . the Legislature understands the constitutional limits on its power and intends that legislation respect those limits." (*Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 129 [96 Cal.Rptr.2d 485, 999 P.2d 718].) Furthermore, we will not impute to the Legislature an intent "to overthrow long-established principles of law," such as prosecutorial discretion, "unless such intention is made clearly to appear either by express declaration or by necessary implication." (*People v. Davenport* (1985) 41 Cal.3d 247, 266 [221 Cal.Rptr. 794,

710 P.2d 861].) Thus, even assuming for the sake of analysis that the Legislature could constitutionally mandate prosecutions for one category of alleged criminal offenses, it would be remarkable if it did so without acknowledging and clearly stating that it was making an exception to the principle of prosecutorial discretion. These cardinal principles of statutory construction, in combination with the wording of Education Code section 15288, support the view that it was intended as a statement of legislative preference, not as a command.

Gananian chiefly relies on two cases, *Board of Supervisors v. Simpson* (1951) 36 Cal.2d 671 [227 P.2d 14] (*Simpson*) and *People v. Shults* (1978) 87 Cal.App.3d 101 [150 Cal.Rptr. 747] (*Shults*), to demonstrate the Legislature is free to mandate the investigation and prosecution of particular types of cases without abridging the separation of powers. We find both cases inapposite.

██ *Simpson* upheld the issuance of a writ of mandate sought by the Los Angeles County Board of Supervisors to compel the county district attorney to initiate a *civil* proceeding—a public nuisance action against a building being used for prostitution. (*Simpson, supra,* 36 Cal.2d at pp. 672, 676 ["It has been held that an action or proceeding by a public authority to abate a public nuisance is civil in nature."].) The action was authorized under a state statute known as the "Red Light Abatement Act" that "expressly and particularly imposes upon district attorneys the duty of maintaining *actions in equity* to abate houses of prostitution" when so directed by the board of supervisors. (*Simpson,* at pp. 673, 675–676, italics added; see Gov. Code, § 26528 ["The district attorney may, and when directed by the board of supervisors shall bring a civil action in the name of the people of the State of California to abate a public nuisance in his county."].) This case does not involve the duties of district attorneys with respect to civil enforcement of nuisance laws. A civil action to abate a nuisance is entirely distinct from a criminal action. (*People v. Gifford* (1921) 54 Cal.App. 182, 184 [201 P. 469].) Furthermore, the power to compel the district attorney to proceed rested with the board of supervisors in *Simpson,* not with the Legislature, and not with any individual citizen. ██ The *Simpson* court expressly left untouched the rule that a district attorney cannot be compelled by mandamus to prosecute a *criminal* case. (*Simpson,* at p. 676; see also *Taliaferro v. Locke* (1960) 182 Cal.App.2d 752, 756–757 [6 Cal.Rptr. 813] [distinguishing *Simpson* and reaffirming the rule].) Construing it to authorize legislative interference with prosecutorial discretion in such cases is not supportable.[11]

---

[11] We disagree with dicta in *Taliaferro v. City of San Pablo* (1960) 187 Cal.App.2d 153, 154 [9 Cal.Rptr. 445], *Ascherman v. Bales* (1969) 273 Cal.App.2d 707, 708 [78 Cal.Rptr. 445], and *People v. Vatelli* (1971) 15 Cal.App.3d 54, 58 [92 Cal.Rptr. 763], to the extent they suggest, in

*Shults* concerned the application of Vehicle Code section 40000.28, which requires a traffic infraction to be prosecuted as a misdemeanor if the defendant had three prior infractions in the preceding 12 months, and the defendant either admitted the infractions or the infractions were alleged in the accusatory pleading. (*Shults, supra,* 87 Cal.App.3d at p. 104.) The issue was whether the accused could unilaterally admit the infractions so that the matter would have to be prosecuted as a misdemeanor, and the accused could demand a jury trial. (*Id.* at pp. 103–104.) The prosecutor argued the choice of whether to try the crime as an infraction or a misdemeanor must be left wholly to the discretion of the prosecutor. (*Id.* at p. 105.) The *Shults* court rejected the prosecutor's position based on the plain language of the statute, and further held the statute did not "unconstitutionally interfere with the prosecutorial function of the People." (*Id.* at p. 107.)

 *Shults* is unavailing. The court expressly distinguished between permitting a defendant to elevate the charge against him to a misdemeanor and "the prosecutorial function of deciding whether to charge a defendant with an offense," which was not impaired by the statute under review. (*Shults, supra,* 87 Cal.App.3d at pp. 106–107.) *Shults* states: "The Legislature therefore has *no constitutional power* to subject the prosecutor's decision [to investigate or prosecute] to the control of a private citizen, whether a defendant or not." (*Id.* at p. 106, italics added.) Far from supporting Gananian's position, *Shults* reaffirmed that prosecutorial discretion over the initiation of criminal charges is grounded in our Constitution, and cannot be overridden by statute.

In fact, *Shults* suggests a second fatal problem with Gananian's position. Even assuming for the sake of analysis that Education Code section 15288 did impose an obligatory duty on the district attorney, nothing in the School Bond Act expressly provides for a private right of action to enforce that duty. "The question whether a given legislative enactment creates a mandatory duty is only half the equation. It must still be determined whether that duty may be enforced in a private action." (*Doe v. Albany Unified School Dist.* (2010) 190 Cal.App.4th 668, 678 [118 Cal.Rptr.3d 507].) Controlling case law holds no private citizen may compel the initiation of criminal proceedings.

 "The prosecutor ordinarily has sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek. [Citation.] *No private citizen, however personally aggrieved, may institute criminal proceedings independently* [citation], *and the prosecutor's own*

---

reliance on Simpson, that the Legislature may require prosecutors to pursue the investigation and prosecution of particular types of *criminal* charges.

*discretion is not subject to judicial control at the behest of persons other than the accused.*" (*Dix v. Superior Court, supra,* 53 Cal.3d at p. 451, italics added [holding neither a crime victim nor any other member of the public has standing to intervene in a criminal proceeding against another person].) "[R]ecognition of citizen standing to intervene in criminal prosecutions would have 'ominous' implications. [Citation.] It would undermine the People's status as exclusive party plaintiff in criminal actions, interfere with the prosecutor's broad discretion in criminal matters, and disrupt the orderly administration of justice." (*Id.* at pp. 453–454.)

Subjecting district attorneys to suit to compel prosecution would undermine the impartiality and integrity of the public prosecution function. (*People v. Eubanks, supra,* 14 Cal.4th at pp. 589–590.) "[T]he district attorney is expected to exercise his or her discretionary functions in the interests of the People at large, and not under the influence or control of an interested individual." (*Id.* at p. 590.)

A further reason to deny citizens standing to compel prosecution was stated in *Taliaferro v. Locke, supra,* 182 Cal.App.2d at pages 755–756: "As concerns the enforcement of the criminal law the office of district attorney is charged with grave responsibilities to the public. These responsibilities demand integrity, zeal and conscientious effort in the administration of justice under the criminal law. However, both as to investigation and prosecution that effort is subject to the budgetary control of boards of supervisors or other legislative bodies controlling the number of deputies, investigators and other employees. Nothing could be more demoralizing to that effort or to efficient administration of the criminal law in our system of justice than requiring a district attorney's office to dissipate its effort on personal grievance, fanciful charges and idle prosecution."

Based on all of these factors—the wording of the statute, the available legislative history, the legal and constitutional context in which it was written, and the practicalities of law enforcement administration—we hold Education Code section 15288 does not create a mandatory duty for law enforcement to expeditiously investigate and prosecute alleged offenses related to the expenditure of school bond funds. The statute is most reasonably construed to state merely the Legislature's desire or preference that district attorneys prioritize such investigations. Further, even assuming for the sake of analysis the statute did impose a mandatory duty, Gananian has no private right or standing to enforce that mandate by bringing suit. His cause of action against Fox was therefore properly dismissed without leave to amend.

### III. DISPOSITION

The judgment is affirmed.

Marchiano, P. J., and Dondero, J., concurred.