Filed 7/29/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRIAN EXLINE, | |
|    Plaintiff and Appellant, | G060034 |
|       v. | (Super. Ct. No. 18CV336922) |
| LISA GILLMOR, | O P I N I O N |
|    Defendant and Respondent. | |

Appeal from an order of the Superior Court of Santa Clara County, Mark H. Pierce, Judge.  Affirmed.

McManis Faulkner, James McManis, Elizabeth Pipkin and Christine Peek for Plaintiff and Appellant.

Crosby & Crosby, Matthew A. Crosby and Michael C. Crosby for Defendant and Respondent.

\*        \*        \*

## INTRODUCTION

Code of Civil Procedure section 425.17 exempts lawsuits filed in the public interest from the purview of California's anti-SLAPP law.[1] The same statute also contains an *exception* to the *exemption* for complaints based on the "creation, dissemination, exhibition, advertisement, or other similar promotion of" a political work. (§ 425.17, subd. (d)(2).) The issue in this case is whether completion of the Statement of Economic Interests California Form 700 (Form 700) by a public official, which publicly reports certain financial information, is covered by the exception to the exemption. We hold that the exception applies to completion of the Form 700 and the complaint in this case is therefore subject to the anti-SLAPP law.

Here, plaintiff Brian Exline appeals from an order granting defendant Lisa Gillmor's special motion to strike under the anti-SLAPP law.[2] Exline filed a complaint against Gillmor alleging that, during her terms serving as a councilmember and then as the mayor of the City of Santa Clara (the City), Gillmor violated the Political Reform Act of 1974 (Gov. Code, § 81000 et seq.) (the Act) by failing to disclose on Form 700 filings her interest in, and income she received from, an entity known as Public Property Advisors. Exline argues his lawsuit is not subject to challenge under section 425.16 because it falls within the public interest exemption codified at section 425.17, subdivision (b) (section 425.17(b)). He contends the trial court erred by concluding that an exception to that exemption, set forth in subdivision (d)(2) of section 425.17 (section 425.17(d)(2)), applies and renders the exemption inapplicable.

---

[1] The anti-SLAPP law is codified at Code of Civil Procedure section 425.16. "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.) All undesignated code references are to the Code of Civil Procedure.

[2] We refer to Gillmor's special motion to strike as "the anti-SLAPP motion."

As we have stated, we hold that Exline's lawsuit, based on Gillmor's Form 700 filings, falls within section 425.17(d)(2)'s exception to the public interest exemption to the anti-SLAPP law. Because the anti-SLAPP law applies, we would next review de novo whether the action arises from protected activity, and, if so, whether Exline met the burden of showing a probability of prevailing on the merits. In his appellate briefing, however, Exline does not argue the trial court erred by concluding this action arises out of protected activity within the meaning of section 425.16, or that Exline failed to show a probability of prevailing on the merits. We therefore do not review those conclusions.

For these reasons, we affirm the trial court's order granting the anti-SLAPP motion.

## BACKGROUND

### I.

#### THE COMPLAINT

In 2018, Exline filed a complaint against Gillmor for violation of the Act. The complaint alleges Gillmor had served as the City's mayor since 2016, and, before that, had served as council member of the City from 1992 to 2000 and from 2011 to 2016, and that Exline "is an individual who resides within the jurisdiction of the City."

The complaint alleges that since at least 2011, Gillmor has done business under the name of Public Property Advisors, which she incorporated on November 17, 2017; she has represented her position in that entity alternatively as independent contractor, consultant, vice president, and president;[3] "Public Property Advisors c/o Lisa Gillmor" has sent invoices to clients in amounts exceeding $500; and from 2011 until

---

[3] The complaint also alleges "Gillmor has been an officer, partner, employee, and/or owner of 'Public Property Advisors,' and/or has held a 'position of management,' within the meaning of the Political Reform Act, from at least 2011 to the present."

3

2016, Gillmor has received $500 or more in income per year from Public Property Advisors.

The complaint further alleges that from 2011 to 2016, Gillmor did not comply with the Act's requirements because she never disclosed her interest in, including "any business position," or any income she received from, Public Property Advisors on her Form 700's or her amended Form 700's. The complaint alleges Gillmor's failure to make such disclosures was intentional or, in the alternative, negligent.

In the complaint, Exline seeks (1) the recovery of monetary damages allowed under Government Code section 91004; (2) a declaration that Gillmor must disclose on her Form 700 any income from, and business position in, Public Property Advisors, and that Gillmor must amend any Form 700 for which said income and position were not properly disclosed; (3) a permanent injunction requiring Gillmor to disclose on her Form 700 any income from, and business position in, Public Property Advisors, and to amend any Form 700 for which said income and position were not properly disclosed; and (4) the recovery of interest, costs, and attorney fees.

## II.

### THE ANTI-SLAPP MOTION

Gillmor filed an anti-SLAPP motion. She argued that Exline's action is not exempt under section 425.17(b) because he failed to meet the required criteria for the public interest exemption and, even if those criteria had been met, Gillmor's Form 700 filings fall within the political work exception to the exemption within the meaning of section 425.17(d)(2).

In opposition to the anti-SLAPP motion, Exline argued the public interest exemption under section 425.17(b) applied. He also argued Gillmor failed to show the action arose out of protected activity and that, in any event, he had demonstrated a probability of prevailing on the merits of his claim.

4

## III.

### THE TRIAL COURT GRANTS THE ANTI-SLAPP MOTION

In its detailed order, the trial court explained: "As a threshold matter, [Exline] asserts that his complaint is exempt from the anti-SLAPP statute as a public interest lawsuit under Code of Civil Procedure section 425.17, subdivision (b). Conversely, [Gillmor] contends that the complaint is not exempt and, in any event, the action falls within the exception to the exemption for political works set forth in Code of Civil Procedure section 425.17, subdivision (d)(2). [Citation.] [¶] If the exception to the public interest exemption applies, the Court need not determine whether [Exline's] action is a public interest lawsuit under Code of Civil Procedure section 425.17, subdivision (b) because, even if it were, [Gillmor] may still invoke the anti-SLAPP law. Consequently, the Court addresses the applicability of the exception first."

The trial court concluded the political work exception applies to Gillmor's Form 700 filings and that Exline's action therefore falls outside the public interest exemption to the anti-SLAPP law. The trial court granted the anti-SLAPP motion after concluding Exline's lawsuit arose out of protected activity and that Exline had failed to meet his burden of showing a probability of prevailing on the merits of his action.

Exline appealed.

## DISCUSSION

### I.

### OVERVIEW OF GOVERNING LEGAL PRINCIPLES AND THE APPLICABLE STANDARD OF REVIEW

#### A.

The Anti-SLAPP Statute and Standard of Review

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States

Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

"The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech.  It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity.  Resolution of an anti-SLAPP motion involves two steps.  First, the defendant must establish that the challenged claim arises from activity protected by section 425.16.  [Citation.]  If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)

We review the trial court's order granting the anti-SLAPP motion under the de novo standard.  (*Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 42.)

B.

Section 425.17

The Legislature enacted section 425.17, which carves out exemptions to the anti-SLAPP law that include an exemption for actions taken in the public interest. (§ 425.17(b).)  In subdivision (a) of section 425.17, the Legislature declared its purpose in so amending the anti-SLAPP law:  "[T]here has been a disturbing abuse of Section 425.16, the California Anti-SLAPP Law, which has undermined the exercise of the constitutional rights of freedom of speech and petition for the redress of grievances, contrary to the purpose and intent of Section 425.16.  The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process or Section 425.16."

6

"Unlike the anti-SLAPP statute, which is 'construed broadly' (§ 425.16, subd. (a)), section 425.17, subdivision (b)'s exemptions are ""'narrowly construed.'"" [Citation.]  The plaintiff bears the burden of proof as to the applicability of the exemptions."  (*Sandlin v. McLaughlin* (2020) 50 Cal.App.5th 805, 818 (*Sandlin*).)  Whether a lawsuit falls within the public interest exemption of section 425.17(b) is "'a threshold issue, and we address it prior to examining the applicability of section 425.16.'"  (*People ex rel. Strathmann v. Acacia Research Corp.* (2012) 210 Cal.App.4th 487, 498.)

Section 425.17(d) imposes express limitations on the scope of the exemptions set forth in that section.  (*Sandlin, supra*, 50 Cal.App.5th at p. 818.)  As relevant here, section 425.17(d)(2) provides that the public interest exemption set forth in section 425.17(b) does not apply to "[a]ny action against any person or entity based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic, literary, musical, *political*, or artistic *work*."  (Italics added.)  "Thus, regardless of whether the plaintiff's action is a public interest lawsuit under section 425.17, subdivision (b), if section 425.17, subdivision (d) also applies, the defendant may bring an anti-SLAPP motion."  (*San Diegans for Open Government v. San Diego State University Research Foundation* (2017) 13 Cal.App.5th 76, 93.)

## II.

### THE TRIAL COURT DID NOT ERR BY GRANTING THE ANTI-SLAPP MOTION

#### A.

*Major v. Silna* (2005) 134 Cal.App.4th 1485 and *Sandlin, supra*, 50 Cal.App.5th 805

Exline's sole argument on appeal is that this action falls within the public interest exemption of section 425.17(b) and therefore is not subject to an anti-SLAPP challenge.  He argues the trial court erred by concluding the public interest exemption does not apply here; he challenges the court's conclusion the action is based on political work within the meaning of section 425.17(d)(2).  Exline's argument is without merit.

As pointed out by the trial court, no court has addressed whether an action premised on Form 700 filings is an action based on political work within the meaning of section 425.17(d)(2). In *Major v. Silna, supra*, 134 Cal.App.4th at pages 1493-1495 (*Major*), in a case of first impression, the appellate court concluded that the defendant's political literature, in the form of letters and advertisements he distributed, constituted political work within the meaning of the statute, triggering the exception to the public interest exemption to the anti-SLAPP law.

In reaching its conclusion, the *Major* court explained: "The word 'work,' as ordinarily understood, means 'something produced or accomplished by *effort*, *exertion*, or exercise of skill,' or 'something produced by the exercise of creative talent or expenditure of creative effort.' (Merriam-Webster's Collegiate Dict. (10th ed. 1995) p. 1363.) However, because the Legislature has accompanied this word with descriptive terms and illustrative examples, our inquiry into its scope is guided by the doctrine of *ejusdem generis*." (*Major, supra*, 134 Cal.App.4th at p. 1494, first and second italics added; third italics in original.)

The *Major* court explained that the doctrine of *ejusdem generis* "'"'applies whether specific words follow general words in a statute or vice versa. In either event, the general term or category is 'restricted to those things that are similar to those which are enumerated specifically.'" [Citation.] The canon presumes that if the Legislature intends a general word to be used in its unrestricted sense, it does not also offer as examples peculiar things or classes of things since those descriptions then would be surplusage. [Citation.]' [¶] In applying this doctrine, we seek an interpretation of subdivision (d)(2) that respects its plain language, harmonizes the provisions of the pertinent statutes, and promotes the goals of the anti-SLAPP law. [Citation.] In addition, '[b]oth the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.'" (*Major, supra*, 134 Cal.App.4th at pp. 1494-1495.)

8

In *Major, supra*, 134 Cal.App.4th at page 1495, the appellate court construed the inclusion of the phrase "'including, but not limited to'" in section 425.17(d)(2) as "a term of enlargement, [which] signals the Legislature's intent that subdivision (d)(2) applies to items not specifically listed in the provision." The appellate court in *Major* concluded: "Viewed in the context of the anti-SLAPP law, [the defendant's] letters and advertisements are not different in kind from the illustrative examples identified in subdivision (d)(2). We do not see any material distinction between [the defendant's] letter—which advocated support for the candidates on the basis of their political positions, and was distributed by mail in Malibu—and an article or editorial of similar length and content in a newspaper or magazine circulated generally in Malibu. [The defendant's] letters (and advertisements) are indistinguishable from the aforementioned article or editorial as 'conduct in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest.' (§ 425.16, subd. (e)(4).)" (*Major, supra*, 134 Cal.App.4th at p. 1495.)

The *Major* court also rejected the plaintiff's argument that section 425.17(d)(2) was intended by the Legislature to except "only the news media and other media defendants" from the public interest exemption of section 425.17(b). (*Major, supra*, 134 Cal.App.4th at p. 1496.) The appellate court noted that legislative history showed "corporations were the principal source of the 'disturbing abuse' of the anti-SLAPP law cited in subdivision (a) of section 425.17." (*Ibid.*)

The *Major* court cited legislative history which "depict[ed] the scope of [section 425.17(d)] in more expansive terms," noting: "An Assembly Committee report states that the subdivision would permit 'the anti-SLAPP motion to be employed against claims arising from *gathering, receiving or processing information for communication to the public* by a publisher, editor, reporter, or other person connected with or employed upon a newspaper, magazine, or other periodical publication, press association or wire services, . . . *or an action based upon the creation or promotion of a dramatic, literary*

9

*musical, political or artistic work*.'. . . [¶] The aforementioned analyses reinforce our conclusions regarding subdivision (d)(2). They disclose that the Legislature's goal in enacting section 425.17 was to limit *corporate* abuse of the anti-SLAPP law, and not to exclude individuals who have distributed political literature from the scope of the anti-SLAPP law. To curb corporate abuse, the Legislature enacted the 'public interest' [exemption][4] to the anti-SLAPP law in section 425.17. However, this [exemption]—as stated in subdivision (b) of section 425.17—is not facially limited to public interest actions against corporations. Accordingly, *the Legislature checked the reach of the 'public interest' [exemption] by enacting subdivision (d)(2), which preserves the application of the anti-SLAPP law to actions against individuals that implicate important forms of protected speech*." (*Major, supra*, 134 Cal.App.4th at p. 1497, first and fourth italics added, second and third italics in original.)

Ultimately, the *Major* court held, "political literature on candidate qualifications exemplifies '[t]he right to speak on political matters,' which is 'the quintessential subject' of constitutional free speech rights. [Citation.] We therefore conclude that the Legislature did not intend to exclude such literature from the political works denoted in subdivision (d)(2), given the Legislature's goal of reaffirming the anti-SLAPP law as a protector of free speech rights through the enactment of section 425.17." (*Major, supra*, 134 Cal.App.4th at pp. 1495-1496.)

In *Sandlin, supra,* 50 Cal.App.5th at page 824, a panel of this court stated it did not need to determine whether the petitioner had met his burden of establishing the public interest exemption to the anti-SLAPP law because even if he had met its criteria, the political work exception of section 425.17(d)(2) barred the exemption's application.

---

[4] In *Major, supra*, 134 Cal.App.4th at pages 1492-1493, the appellate court refers to section 425.17(b) as setting forth the public interest *exception* and section 425.17(d)(2) as providing an *exemption* to that exception. In the interest of clarity, we modify the quotation from *Major* to conform with *Sandlin, supra*, 50 Cal.App.4th at page 824 and the trial court's order in this case regarding the use of those terms.

Citing *Major, supra*, 134 Cal.App.4th 1485, the *Sandlin* court held that the "creation and submission of candidate statements, which are by definition political writings, plainly fall within this exception." (*Sandlin, supra*, 50 Cal.App.5th at p. 824.) The court explained: "Subdivision (d)(2) 'preserves the application of the anti-SLAPP law to actions against individuals that implicate important forms of protected speech,' and '"[t]he right to speak on political matters"'—including candidate qualifications—'"is the *quintessential* subject of our constitutional protections of the right of free speech."' [Citation.] For these reasons, the public interest litigation exemption to the anti-SLAPP statute does not apply." (*Ibid.*) As we will explain, we apply the same analytical framework to the issue before us: Whether the exception to the public interest exemption applies here.

B.

Application of Section 425.17 to the Completion of Form 700

Here, Exline's action is based on the content of Gillmor's Form 700 filings. There is no question Form 700 is political in nature. The Form 700 "is a standard form California public officials and employees must file to disclose their financial holdings." (*Gananian v. Wagstaffe* (2011) 199 Cal.App.4th 1532, 1537, fn. 5.) "[O]ne of the central purposes of the disclosure requirements is to insure that public officials 'perform their duties in an impartial manner, free from bias caused by their own financial interests or the financial interests of persons who have supported them.'" (*Bach v. McNelis* (1989) 207 Cal.App.3d 852, 868, citing Gov. Code, § 81001, subd. (b); see Gov. Code, § 81002, subd. (c) [the Act was enacted because "[a]ssets and income of public officials which may be materially affected by their official actions should be disclosed and in appropriate circumstances the officials should be disqualified from acting in order that conflicts of interest may be avoided"].)

Gillmor's Form 700 filings also constitute political *work* within the meaning of section 425.17(d)(2) as Gillmor filled out these complex, comprehensive, and public forms through her effort as required by law. In *Major, supra*, 134 Cal.App.4th at

11

p. 1494, the court defined the word "work" to mean "'something produced or accomplished by effort, exertion, or exercise of skill,' or 'something produced by the exercise of creative talent or expenditure of creative effort.'"

We agree with the definition of "work" used by the court in *Major, supra*, 134 Cal.App.4th at page 1494. The completion of the Form 700 by Gillmor involved "effort" and "exertion" as used in the definition of "work" set forth in *Major*. (*Ibid.*) The process of completing the Form 700 requires effort; a public official must discern what the law requires the official to disclose, as it may not always be obvious. Gillmor's Form 700 filings, collectively attached as exhibit A to Exline's complaint, include instructions from the Fair Political Practices Commission (the FPPC) for filling out the form. These instructions cite a separate "Reference Pamphlet," its own website, and a gift tracking app for mobile devices the FPPC created to help public officers track gifts. Those documents also show the FPPC offers an "Advice Email" address and a "FPPC Toll-Free Helpline." In light of the complexity of filling out the Form 700, including its various schedules, a public official might exercise discretion to over-disclose personal financial interest information out of an abundance of caution and with an awareness that such documents are publicly filed and thus available for public consumption.

We agree with the trial court that: "Viewed in the context of the anti-SLAPP law, [Gillmor's] Form 700 filings are not meaningfully different in kind from the illustrative examples identified in subdivision (d)(2). There is no material distinction between [Gillmor's] Form 700 filings—which contain information regarding [Gillmor's] financial holdings which may be materially affected by her official actions—and an article of similar length and content in a newspaper circulated generally in Santa Clara."

We acknowledge that whether Form 700 filings constitute political work under section 425.17(d)(2) is a closer question than that posed by the political literature and candidate statements at issue, respectively, in *Major* and *Sandlin*. Nevertheless, in light of the plain meaning of the statutory language coupled with the legislative intent

12

that section 425.16 be applied broadly and exemptions to that statute be applied narrowly, we conclude Gillmor's efforts to complete and file Form 700's constitute political work, thereby rendering the public interest exemption to section 425.16 inapplicable.

It is worth emphasizing the analysis of an anti-SLAPP motion does not end with the trial court's conclusion that section 425.17(d)(2) exception applies as such a conclusion does not result in a court automatically striking a claim. Instead, the determination of the exception's applicability triggers the normal anti-SLAPP two-prong analysis of such a claim under section 425.16. Under that analysis, if the claim arises out of protected activity, a plaintiff must then meet the standard of showing a probability of prevailing on the merits. As a result, a plaintiff with a meritorious claim based on allegations of Form 700 irregularities would be able to defeat an anti-SLAPP motion and proceed in litigating that claim.

In this case, the trial court analyzed the first prong under section 425.16 and concluded Gillmor had carried her burden of showing the action arose out of protected activity. The trial court next analyzed the second prong under section 425.16 and concluded Exline had failed to carry his burden of demonstrating a probability of prevailing on the merits of his action. In his opening brief, Exline does not challenge the trial court's findings on either prong on appeal.

The trial court did not err by granting the anti-SLAPP motion.

13

**DISPOSITION**

The order granting the anti-SLAPP motion is affirmed.  Respondent shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.