Filed 10/22/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| A.D. IMPROVEMENTS, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DEPARTMENT OF TRANSPORTATION, <br><br> Defendant and Respondent. | D082751 <br><br><br> (Super. Ct. No. CIVSB2132716) |

APPEAL from an order of the Superior Court of San Bernardino County, David S. Cohn, Judge. Reversed and remanded with directions.

Hunt Ortmann Palffy Nieves Darling & Mah, Dustin Lozano and Emily Zung Manninger for Petitioner and Appellant.

Erin E. Holbrook, Chief Counsel, Jerald M. Montoya, Deputy Chief Counsel and Mark Berkebile for Respondent

A.D. Improvements, Inc. (ADI), which leases property from the California Department of Transportation (Caltrans), appeals the trial court's denial of a writ directing Caltrans to sell it the property.

This appeal involves the interpretation of Streets and Highways Code section 118.1. The provision requires Caltrans to offer to sell at fair market value "commercial real property acquired for the construction of a state

highway, but no longer required for that purpose," to an occupant leasing the land.  (Sts. & Hy. Code, § 118.1.)  ADI was using the leased property commercially when it applied to purchase it.  Yet Caltrans denied ADI's application because the property was not commercial when Caltrans acquired it.  The trial court agreed with Caltrans and denied ADI's petition.

ADI argues the statute merely requires the leased property to be commercial at the time Caltrans deems it excess.  Based on a plain and contextual reading of the statute, we agree, reverse, and remand.

I.

Caltrans purchased the leased property, then undeveloped, as part of a freeway development plan.  ADI and Caltrans entered into an agreement for ADI to lease the property.  ADI has used the property as a commercial staging area for equipment and machinery for its projects for Caltrans.

Caltrans ultimately decided against using the property for a freeway. In March 2021, while ADI was leasing and occupying the property, Caltrans officially deemed the land "excess real property."  After the lease expired, ADI continued to lease and occupy the land under a month-to-month holdover tenancy.

Under Streets and Highways Code sections 118.1 and 118.6, Caltrans "shall" offer commercial land it deems "excess" for sale at fair market value to the current occupant, if the occupant (1) leased the property from Caltrans; (2) used and occupied the property; and (3) made at least $5,000 in improvements during the lease.  (§118.1.)

Given Caltrans' continued refusal to offer to sell the leased property to it, ADI filed a petition for writ of mandate seeking an order directing Caltrans to present an offer of sale to ADI.  Following briefing and oral argument, the trial court denied the petition.  It held the phrase "'commercial

2

real property acquired for the construction of a state highway'" applies only to property that was commercial when acquired by Caltrans, because the word "acquired" is a past-tense verb rather than an adjective.

## II.

As this appeal turns on the meaning of the words used in section 118.1, it presents "a question of law that we review de novo." (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.) When interpreting a statute, we must "determine the Legislature's intent so as to effectuate the law's purpose." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.) We first give the language "a plain and commonsense meaning . . . in the context of the statutory framework as a whole[,] in order to determine its scope and purpose and to harmonize the various parts of the enactment." (*Ibid*.) We "must generally follow [the] plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." (*Ibid*.) If the "language permits more than one reasonable interpretation," however, we "may consider other aids, such as the statute's purpose, legislative history, and public policy," to assess its meaning. (*Ibid*.)

## A.

No one disputes the trial court's findings that (1) a lease was in effect, (2) ADI used and occupied the property, and (3) ADI improved the property by nearly $20,000. No one further disputes the land is currently commercial and has been so used since 2017. Indeed, the lease forbade ADI from using the land residentially. Thus, the sole disputed issue is whether the statute requires the leased property to have been commercial when Caltrans (1) initially acquired it, or (2) designated it excess.

3

The clause of section 118.1 at issue requires Caltrans, "with respect to commercial real property acquired for the construction of a state highway, but no longer required for that purpose because the construction will not be undertaken," to sell the property to the occupant under specific conditions. (§ 118.1.) ADI argues "acquired" is used as an adjective denoting possession, so it is illogical to interpret it as a past-tense verb. Caltrans contends section 118.1 only applies if the property was used commercially prior to acquisition. As it was not here, Caltrans asserts section 118.1 is inapplicable.

*Bayside Auto & Truck Sales, Inc. v. Department of Transportation* (1993) 21 Cal.App.4th 561 (*Bayside*)—the only published case discussing section 118.1—supports ADI's reading of the statute. *Bayside* explained, "Once commercial property is determined to be 'no longer required' for highway purposes, Caltrans 'shall first offer' it for sale at its current fair market value to an occupant who has made over $5,000 in improvements." (*Id.* at pp. 566-567 [quoting section 118.1].) In interpreting section 118.1, *Bayside* implied that the current use of the property is what matters. There was no discussion of the property's original zoning.

Well-established principles of statutory construction also support ADI's reading of section 118.1. Section 118.1 further states, "The failure of the department to first offer excess real property as required by this section shall not affect the validity of any conveyance of this excess real property to any person or entity unaware of the failure of the department to do so." This language clearly indicates the Legislature's intent that the statute governs the sale of excess real property. As the property must be *excess* commercial real property, the statute signals the court should look to the property's current, rather than past, use. No language expressly requires the land to have been used commercially prior to being deemed excess.

4

Additionally, section 118.6 mandates Caltrans "shall, to the greatest extent possible, offer to sell or exchange excess real property [under section 118.1] within one year" of being deemed excess. (Sts. & Hy. Code, § 118.6.) This provision calls for an expansive reading of section 118.1, as it directs Caltrans to effectuate the sale of all excess land, with limited statutorily defined exceptions that are inapplicable here. There is no mention of commercial property, let alone any limitation regarding commercial property. Nor is there mention of the time at which the land must be classified as commercial.

Moreover, section 118.6 specifically defines "'[e]xcess real property'" to mean "all land and improvements situated outside of calculated highway right-of-way lines not needed or used for highway or other public purposes." (§ 118.6.) The land referred to in section 118.1 is therefore excess "commercial real property." Because land can only be deemed excess *after* Caltrans acquires it, the statute focuses on the property's use at the time of that designation rather than a prior time, like acquisition. Thus, the trial court erred when it inserted a requirement into the statute that the land be commercial when acquired.

In its brief, Caltrans adds language to section 118.1 to force meaning into the statute never intended by the Legislature. In analyzing whether the section uses "acquired" as an adjective or a verb, Caltrans brackets in qualifiers, contending the leased property is not "'commercial property [that was] acquired for the construction of a state highway, but no longer required for that purpose because the construction [was] not to be undertaken.'" By adding the bracketed language, Caltrans implicitly concedes its interpretation is not supported by a plain reading of the statute.

5

B.

Because we conclude the plain meaning of section 118.1 is that leased property merely needs to be used commercially when deemed excess, we need not consider the statute's legislative history. Nevertheless, the legislative history further supports our conclusion.

The parties do not dispute that we may consider the legislative history to resolve any ambiguities. Thus, on our own motion, we judicially notice documents comprising the legislative history materials related to the enactment of section 118.1. (Evid. Code, §§ 452, 459; *Gananian v. Wagstaffe* (2011) 199 Cal.App.4th 1532, 1541, fn. 9 ["We may take judicial notice of legislative history materials on our own motion."].)

Like the statute itself, the legislative history of Assembly Bill No. 1277 (1981-1982 Reg. Sess.), which added section 118.1 to the Streets and Highways Code, contains no indications that the land had to be zoned or used commercially when acquired by Caltrans.

Instead, the legislative history materials repeatedly state Assembly Bill No. 1277 "requires the Department of Transportation to first offer the sale of excess commercial real property to current occupants of that property, under specified conditions." (See e.g., Assem. Com. On Ways & Means, Analysis of Assem. Bill No. 1277 (1981-1982 Reg. Sess.) June 9, 1981.) The materials also repeatedly state: "Under existing law, the Department must sell excess commercial real property upon the terms and conditions established by the California Transportation Commission." (Cal. Dept. of Transportation, Supplemental Analysis of Assem. Bill No. 1277 (1981-1982 Reg. Sess.) Sept. 21, 1981.) These repeated references to the sale of "excess commercial real property" indicate the Legislature intended the property to be commercial when it was deemed "excess," not when acquired.

6

Similarly, the analysis by the Senate Transportation Committee explains the "bill establishes a priority system for the sale of excess commercial property acquired for highway construction." (Sen. Com. on Transportation, Analysis of Assem. Bill No. 1277 (1981-1982 Reg. Sess.) Aug. 4, 1981.) The supplemental analysis by the Department of Transportation further explains the "bill as originally worded would have required the Department to offer to sell excess residential property . . . to the occupant of the property if the occupant has rented the property from the Department, has used and occupied it[,] and has made improvements at his own expense. The bill as amended deletes the word 'residential' and inserts the word 'commercial' in place of it, thereby requiring the Department to first offer to sell commercial property to the occupant subject to the same restrictions and conditions." (Cal. Dept. of Transportation, Supplemental Analysis of Assem. Bill No. 1277 (1981-1982 Reg. Sess.) May 13, 1981.)

Thus, to the extent there is any ambiguity, the legislative history reinforces our plain reading of section 118.1, which does not require the leased property to have been used commercially when acquired by Caltrans. The "excess" designation cannot be divorced from the commercial use of the property.

C.

Finally, Caltrans' own manuals support ADI's interpretation. Section 11.16.05.00 of Caltrans' Property Management Manual, which comments on section 118.1, defines "excess" land as including commercial property "'on a rescinded route or downscoped project.'" The manual's language does not add any qualifiers requiring the subject commercial property to have been zoned commercial when Caltrans acquired it.

7

Further, Section 16.05.06.01 of Caltrans' Excess Land Manual, entitled "Direct Sale of Commercial Property Pursuant to S&H Code Section 118.1," notes that "Section 118.1 is . . . also applicable in situations where commercial property that was originally acquired for construction purposes has since been determined not to be required for construction." The only qualifier is that the property must have been originally obtained, but then not used, for construction purposes.

## III.

We reverse and remand the trial court's order denying ADI's petition and direct the trial court to issue a writ requiring Caltrans to comply with its ministerial duty under section 118.1 to offer to sell the leased property to ADI at fair market value. ADI is entitled to its costs on appeal.

CASTILLO, J.

WE CONCUR:

IRION, Acting P. J.

KELETY, J.

8